# LONDON ASSURANCE COMPANY *v.* DRENNEN & Others.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

Submitted January 6, 1886.—Decided January 18, 1886.

An agreement by A. with B. that on the payment of a sum of money B. shall participate in the profits of A.'s business, gives B. no interest, as between themselves, in A.'s stock in trade, when it appears that it was their intention that he should have no such interest.

This case was before the court at the last term, 113 U. S. 51, when the court gave a construction to the contract between the Assurance Company and the present defendants in error, then plaintiffs in error. That contract, and other facts in that case which also enter into this case, will be found on pages 51, 52, 53 and 54 of vol. 113. At the new trial had in September,

1885, a verdict was rendered for plaintiffs for $6770, and judgment accordingly.   This writ of error was sued out to review that judgment.   There was a bill of exceptions which incorporated all the evidence, including the agreement reported in the statement of facts in vol. 113, and the evidence offered by the Insurance Company to show that there was a partnership between the defendants in error and Arndt, and rebutting testimony offered by defendants in error, and then continued:

" Upon the foregoing admissions and testimony, which was all that was received or considered on said trial, the defendant prayed the court to charge the jury that ' On the undisputed evidence in this case the jury are instructed that Mr. Arndt became a copartner in the insured property with the plaintiffs, Drennen, Starr & Everett, and was such copartner at the time of the fire, and your verdict must be for the defendants;' which charge the court refused to give, and the defendant then and there duly excepted to the said ruling, and said exception was then and there duly noted and allowed.

" The defendant prayed the court to charge the jury that ' The question is whether Arndt, in paying his money into the firm and executing his note to the firm, became a lender of money to the firm, and the firm a mere borrower from him, or whether he acquired an interest in the business and property of the firm itself as a member thereof.   On this subject the law is : If it was not the understanding that Arndt became a lender to the concern, and if it was the understanding between the parties that the amount of his investment was to be risked in their business and become part of the capital stock, and he was to have a share of the net profits, he is not a mere lender, but a partner' ;  which charge the court refused to give, and the defendant duly excepted to the said ruling, and said exception was then and there duly noted and allowed.

" The defendant prayed the court to charge the jury that ' Where a person contributes a portion of the common capital which is mingled with the contributions of the other parties, and the whole is managed for the joint interests of those who contribute, the contributors each having a share of the net profits of the business, they become thereby partners as between them-

selves in the capital stock or property of the concern;' which charge the court refused to give, and the defendant then and there duly excepted to the said ruling, and said exception was then and there duly noted and allowed.

" The court charged the jury that the making of the written contract, Exhibit 'K,' and the payment of money and giving of note by Arndt to plaintiffs, as shown, could not be considered as proving partnership relation between the plaintiffs and Arndt; and that the issue as to whether such partnership relation was formed must be determined from all the other testimony and facts in the case, outside and independent of said contract and payment under it; that said payment of money must not be considered as evidence of such partnership, but must be taken in connection with said contract and as part performance thereof. The defendant then and there duly excepted to the said instruction so far as it excluded from the consideration of the jury the payment of said money and giving of said note as evidence upon the question of partnership, and said exception was then and there duly noted and allowed.

" The court charged the jury as follows: 'Even if you should find from the evidence that the apparent relation between the plaintiffs and Arndt was such as would charge them as partners at the suit of creditors or third persons, that alone would not be sufficient to constitute them as partners as between themselves, or to maintain the defense in this action—that is, Arndt might have an interest in the profits without being an actual partner.' To which charge the defendant then and there duly excepted, and the said exception was then and there duly noted and allowed.

" The court charged the jury as follows: ' If you find from the evidence that up to the time of the fire it was not the intention of the plaintiffs and Arndt to become partners, but that it was their intention to organize a corporation of which they should be members and stockholders, and that the goods and property of the plaintiffs should be transferred to said corporation when organized, and they should take stock in said corporation to the extent of the ascertained value thereof, and that Arndt should take stock in said corporation to the extent of ten thou-

sand dollars contributed by him, and that no change should take place in the name or character of the firm of Drennen, Starr & Everett until such corporation should be organized, then the defense fails, and the plaintiffs are entitled to a verdict for the full amount of the policies, with interest, as claimed in the complaint. That is another way of putting it, that if there was no partnership—that is, if Arndt was not taken in as a partner—then the plaintiffs are entitled to recover.' To which charge the defendant then and there duly excepted, and the exception was then and there duly noted and allowed.

" The court charged the jury as follows: ' If you find from the evidence that said Arndt was to be a participant in the profits realized from the business of the plaintiffs, to a certain extent from January 1st, 1883, this would not necessarily constitute him a partner in or joint owner of the goods and property of the plaintiffs insured by these policies. He might have an interest in such profits without having any joint title or interest with the plaintiffs in the ownership of their goods.' To which charge the defendant then and there duly excepted and said exception was then and there duly noted and allowed.

" The court charged the jury as follows: ' If you find from the evidence that the plaintiffs, in consideration of Arndt's paying in $10,000 with interest thereon from January 1st, 1883, in advance of the formation of the contemplated corporation, agreed that he should receive a proportionate share of the profits of their business from said January 1st to the formation of said contemplated corporation, that fact would not have the effect to assign or transfer to him any title or interest in the insured goods or property of the plaintiffs in the absence of any agreement to that effect.' To which charge the defendant then and there duly excepted, and the exception was then and there duly noted and allowed.

" The court charged the jury as follows: ' The defendant is entitled to contradict or vary the written contract of May 24, 1883, by parol evidence; and the parol evidence which has been received may be considered by you and is competent. And if you find from it that, contemporaneous with the making of the written contract of May 24th the plaintiffs entered

into a verbal contract with Mr. Arndt for a present partner-ship, you are not precluded from finding that fact because of said written contract.' "

*Mr. C. K. Davis* and *Mr. C. W. Bunn* for plaintiff in error.

I. Where the bill of exceptions is certified to contain all the evidence, and where the court, upon all the evidence, was requested to direct a verdict, and the exception to the refusal so to instruct the jury is properly preserved, this court, under the authorities, will examine the question, and determine upon all the evidence whether, as a matter of law, the verdict ought to have been directed as requested; and if it ought to have been directed, error has been committed. *Lancaster* v. *Collins,* 115 U. S. 222. Taking this as the rule, there can be no doubt from the record what were the relations of the parties prior to the fire, nor what relations existed at the time of the fire; nor what legal conclusions flow from them. We admit that we must establish a partnership *inter sese.* At the time of the fire Arndt had an interest which would have entitled him to maintain a bill for a receiver and accounting in case of gross fraud upon the partnership by one of defendants in error. Can there be any doubt of this? He was not a mere lender of money. There was no time fixed for repayment; no arrangement for interest. His money went into the concern, paid for its goods, paid its debts; he was one of the losers at the fire, and his remedy to recover his proportionate share was in equity, not at law. The cases are uniform, even where a party makes no contribution to the capital stock, but simply renders services, if he shares in the the net profits as profits, he is a partner. Where he makes contribution to the capital, and shares in the profits as such in proportion to his contribution, the question has never been one which is even open to doubt.

It will doubtless be said that if Arndt was a partner, he was a partner in the profits only, and not in the property. Whatever plausibility this claim might have if Arndt only contributed his labor and skill, it is clearly unsound, and not supported by any precedent, when applied to a case like the one at bar, where Arndt contributes ten seventy-fifths of the capital stock,

and shares in the profits in proportion to his contribution. This contribution *per se* made him jointly interested in the property of 'the firm. When the assured all testify that Arndt added his $10,000 to their capital as a part of it, and was to share profits according to his contribution, they make him a partner *per se*, both as to creditors and as between themselves. *Berthold* v. *Goldsmith*, 24 How. 536; *Beauregard* v. *Case*, 91 U. S. 134, 140; *Whitcomb* v. *Converse*, 119 Mass. 38; *Livingston* v. *Blanchard*, 130 Mass. 341; *Ex parte Owen*, 4 DeG. & Sm. 351; *Syers* v. *Syers*, 1 App. Cas. 174. Note to *Waugh* v. *Carver*, 1 Smith's Lead. Cas. 491; *Chapline* v. *Conant*, 3 West Virginia, 507; *Fitch* v. *Harrington*, 13 Gray, 468, 474; *Vassar* v. *Camp*, 14 Barb. 341. It is not necessary that community of loss should be provided for, in order to constitute a partnership, nor that there should be community of loss in fact in order to create a partnership property to be owned by partners as such. *Bucknam* v. *Barnum*, 15 Conn. 67; *Munro* v. *Whitman*, 15 N. Y. Supreme Ct. (8 Hun), 553; *Ex parte Langdale*, 18 Ves. 299, 301; *Gilpin* v. *Enderly*, 5 B. & Ald. 954; *Hendrick* v. *Gunn*, 35 Geo. 234.

If the assured admitted Arndt as a partner in the property, and he was a joint owner in the same with them at the time of the fire, the policy of insurance was thereby avoided. We do not deny that one of several joint owners may transfer his interest to the others without avoiding the policy. That was the case in *Lockwood* v. *Ins. Co.*, 47 Conn. 553, 564. But the theory is, that the insurance company has the right to say with whom it will contract, and in whom it will rest its confidence; in whom it will repose the trust of bearing for it the moral hazard incident to the insurance. Any process by which a new party to the contract is introduced, by which the insured shifts the moral hazard from himself to a stranger, creates a new contract and a new relation which the company has not consented to assume. *Malley* v. *Ins. Co.*, 51 Conn. 222; *Hoffman* v. *Ins. Co.*, 32 N. Y. 405; *Burnett* v. *Ins. Co.*, 46 Ala. 11; *Pierce* v. *Ins. Co.*, 50 N. H. 297; *West* v. *Ins. Co.*, 27 Ohio St. 1; *Dix* v. *Ins. Co.*, 22 Ill. 272; *Barnes* v. *Ins. Co.*, 51 Maine, 110; *Ins. Co.* v. *Ross*, 23

Ind. 179.; *Finley* v. *Ins. Co.*, 30 Penn. St. 311; *Ins. Co.* v. *Riker*, 10 Mich. 279; *Dey* v. *Ins. Co.*, 23 Barb. 623; *Wood* v. *Ins. Co.*, 31 Vt. 552; *Keeler* v. *Ins. Co.*, 16 Wisc. 550; *Ins. Co.* v. *Hauslein*, 60 Ill. 521; *Lappin* v. *Ins. Co.*, 58 Barb. 325; *Dreher* v. *Ins. Co.*, 18 Missouri, 128; *Savage* v. *Ins. Co.*, 52 N. Y. 502; *Pindar* v. *Ins. Co.*, 47 N. Y. 114; *Briggs* v. *Home Ins. Co.*, 88 Nor. Car. 141; *Oakes* v. *Ins. Co.*, 131 Mass. 164. Mr. Justice Miller at the first trial of this cause, *Drennen* v. *London Assurance Co.*, 20 Fed. Rep. 657.

II. The court erred in instructing the jury that the payment of money and the giving of note by Arndt to the plaintiffs, as shown, could not be construed as proving partnership relations between the plaintiffs and Arndt; and that the issue as to whether such partnership relations were formed must be determined from all the other testimony and facts in the case outside of said contract and payment under it; that said payment of money must not be construed as evidence of such partnership, but must be taken in connection with said contract, and as part performance thereof. Upon the trial (this court having decided that the written contract had sole reference to a future corporation, and no reference to a partnership relation) a large amount of parol testimony was taken to show that there was a partnership relation between the parties prior to the formation of the contemplated corporation. It may well be, as these defendants in error have positively testified, that this $10,000 was paid in, not only to secure Mr. Arndt a share in the corporate stock, but in order to entitle him in the meantime, and before the formation of the corporation, to a share of the net profits in the partnership business. We were entitled to have it submitted to the jury to say whether this money was not, as testified by the defendants in error, paid in for this double purpose. The Circuit Court, by withdrawing from the jury any consideration of this payment by Arndt, deprived the plaintiff in error of a great and almost controlling part of the *res gestæ* of the transaction.

The rule is thus laid down in Chitty on Contracts: "But though parties and privies, as between themselves, are estopped from contradicting a written statement by parol proof, yet the

rule does not apply to strangers who have an interest in show-ing the true state of the case." 1 Chitty on Contracts, (11th Am. Ed.) 141, note (*e*). A long list of American authorities might be cited to sustain our position. We think the follow-ing are entirely sufficient for the purpose: *Barreda* v. *Silsbee*, 21 How. 146, 169; *Dempsey* v. *Kipp*, 61 N. Y. 462, 471; *Mc-Master* v. *Ins. Co.*, 55 N. Y. 222, 234; *Smith* v. *Moynihan*, 44 Cal. 53; *Hussman* v. *Wilke*, 50 Cal. 250; *Edgerley* v. *Emer-son*, 23 N. H. (3 Foster), 555, 564; *Krider* v. *Lafferty*, 1 Whar-ton, 303; *Furbush* v. *Goodwin*, 25 N. H. (5 Foster), 425; *Low* v. *Blodgett*, 21 N. H. (1 Foster) 121; *Reynolds* v. *Mag-ness*, 2 Iredell Law, 26; *Venable* v. *Thompson*, 11 Ala. 147. Especially see the following in Minnesota: *Van Eman* v. *Stanchfield*, 10 Minnesota, 255; *Sanborn* v *Sturtevant*, 17 Minnesota, 200.

MR. JUSTICE HARLAN delivered the opinion of the court.

This case has been once before in this court. *Drennen* v. *London Assurance Co.*, 113 U. S. 51. It is an action upon two policies of fire insurance executed March 10, 1883, and cover-ing certain goods, wares, and merchandise belonging to the firm of Drennen, Starr & Everett. Each policy contains the following provisions : "If the property be sold or transferred, or any change takes place in title or possession, (except by succession by reason of the death of the insured,) whether by legal process, or judicial decree, or voluntary transfer or conveyance, . . . then, and in every such case, this policy shall be void." "If the interest of the assured in the property be any other than the entire, unconditional, and sole owner-ship of the property for the use and benefit of the assured, . . . it must be so represented to the corporation and so ex-pressed in the written part of this policy, otherwise the policy shall be void. When property has been sold or delivered, or otherwise disposed of, so that all interest or liability on the part of the assured herein named has ceased, this insurance on such property shall immediately terminate."

The insurer contends that after the execution of the policies, and before the loss of July 29, 1883, there was, by the

voluntary act of the insured, a sale or transfer of the property, or such a change in title or possession as rendered the policies, by their terms, void. This defence rests entirely upon the claim that, prior to the loss, one Arndt was admitted as a partner in the firm of Drennen, Starr & Everett. The plaintiffs [below] deny that he ever became a partner with them, or ever acquired an interest in the property insured. Upon the record as it was at the former hearing, that question depended mainly upon the construction of the written agreement of May 24, 1883, which is given in full in 113 U. S. 52, whereby the insured agreed to receive Arndt "into their business," upon certain terms and conditions, among which are the following: That the company should be incorporated; that Arndt should pay into the firm for its use, on or before June 14, 1883, the sum of $5000, and a like sum on or before January 1, 1885, the latter amount, until paid, to be evidenced by his promissory note, dated January 1, 1883, and each payment to bear interest at eight per cent. from the date last named; that the business "to be carried on by the new company to be formed" —the name of which was to be thereafter determined—should be of the same nature as that then conducted by Drennen, Starr & Everett; and that "no change in the name or character" of that firm "shall be made until said corporation shall be formed." Arndt paid to the firm, on the 18th of June, 1883, the sum of $5000, and executed on the 3d of July of the same year the required note for a like amount, the money and note being entered to his individual credit on the books of Drennen, Starr & Everett. Upon this state of facts this court, reversing the judgment rendered for the insurer, said: "The instruction by the court below proceeded upon the ground that the payment by Arndt in cash and notes of the amount which he agreed to pay, and their receipt and entry upon the books of the firm to his credit, gave him an interest as partner in the business; whereas such facts only establish the performance of some, not of all, the conditions prescribed; for, by the agreement, the formation of the proposed corporation was expressly made a condition, with the others named, to Arndt's becoming interested in the business. In our judgment, looking at the

whole agreement, the parties did not contemplate a partnership, and none was ever established between them. The agreement looked only to a corporation, the payment and other things specified being in preparation for its ultimate formation, which was an adequate, as it was the actual, consideration; consequently there was, prior to the loss, and under the most liberal interpretation of the policies, no change in the title or possession of the property, nor any transfer thereof, that avoided the policies."

At the last trial there was evidence to the effect that Arndt, after paying the $5000 in cash, and executing his note for the same amount, became entitled, by agreement with the insured, to participate in the profits of their business from January 1, 1883—he paying interest on these amounts from that date. And there was some slight proof that Drennan upon one occasion spoke of Arndt as a member of his firm.

On behalf of the insured it is contended that, even if Arndt had become a partner in their firm, the policy would cover their interest in the property. This results, it is claimed, from that clause in the policy providing for the termination of the insurance if the property be sold or delivered or otherwise disposed of, "so that *all* interest or liability on the part of the insured herein named has ceased." We deem it unnecessary to consider this question, because the case can be satisfactorily determined upon other grounds. In view of all the evidence, the court, when delivering its charge, might well have assumed that there was no purpose on the part of the insured, or of Arndt, that the latter should have such an interest in the property as would belong to a partner. The court, therefore, rightfully refused to instruct the jury that upon the undisputed evidence Arndt became a partner in the firm of Drennen, Starr & Everett. Such an instruction could not have been given without disregarding the interpretation which this court at the former hearing gave to the written agreement of May 24, 1883; for, it was then said that the parties, by that agreement, appeared, *ex industria*, to have excluded the possibility of Arndt's acquiring an interest in or any control of the insured property in advance of the formation of an incorporated com-

pany. That interpretation was not affected by the fact that Arndt paid $5000 in cash and gave his note for a like amount; for, as heretofore said, those acts were simply in execution of the agreement and in preparation for the ultimate formation of the proposed corporation, and were not, as the court below properly decided, evidence of a partnership. The payment of the money and the execution of the note were plainly required by the agreement, and the purpose of both acts is to be ascertained from its provisions.

The main ground upon which the defendant, at the last trial, claimed exemption from liability on the policies, is indicated in two of its requests for instructions to the jury: 1. That "if it was not the understanding that Arndt became a lender of money, and if it was the understanding between the parties that the amount of his investment was to be risked in their business and become part of the capital stock, and he was to have a share of the net profits, he is not a mere lender, but a partner;" 2. That "when a person contributes a portion of the common capital stock, which is mingled with the contributions of other parties, and the whole is managed for the joint interests of those who contribute, the contributors each having a share of the net profits of the business, they become thereby partners as between themselves in the capital stock or property of the concern."

We are of opinion that the court did not err in declining to so instruct the jury. The question is not whether Arndt, by reason of his participation in the profits of the business of Drennen, Starr & Everett, could have been charged at the suit of creditors as a partner in that firm. The inquiry is, whether the insured, after the execution of the policies, and before the loss, sold or transferred the property covered by the policies, or whether there occurred, during that period, any change in title or possession. If there had been a sale or transfer of the entire property to one who had no interest in it nor any right to control it at the time the contract of insurance was made, there would undoubtedly have been such a change in the title as to render the policies void. And, for the purposes of the present case, it may be conceded that such would have been the result

had Arndt become a partner in the firm of Drennen, Starr & Everett. But the sale or transfer to which the policies refer was one that would pass an interest in the property itself. Mere participation in profits would give no such interest contrary to the real intention of the parties. Persons cannot be made to assume the relation of partners, as between themselves, when their purpose is that no partnership shall exist. There is no reason why they may not enter into an agreement whereby one of them shall participate in the profits arising from the management of particular property without his becoming a partner with the others, or without his acquiring an interest in the property itself, so as to effect a change of title. As the charge to the jury was in accordance with these principles, and as the evidence conclusively showed that Arndt did not, prior to the loss, acquire an interest in, or any control of, the property insured, but was only entitled to participate in the profits arising from its management after a named date, there is no reason to disturb the judgment. It is, therefore,

*Affirmed.*